UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MARSHA ATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| NORTHERN VIRGINIA COMMUNITY | ) | |
| COLLEGE SYSTEM, | ) | |
| NORTHERN VIRGINIA COMMUNITY | ) | |
| COLLEGE MEDICAL EDUCATION | ) | |
| CAMPUS, | ) | |
| Serve: Mr. Robert John Weil | ) | |
| 11154 Tattersall Trl. | ) | |
| Oakton, VA 22124 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW the Plaintiff, MARSHA ATKINS ("Plaintiff" or "Dr. Atkins") by and through undersigned counsel, and moves for judgment against the Defendants, NORTHERN VIRGINIA COMMUNITY COLLEGE SYSTEM and NORTHERN VIRGINIA COMMUNITY COLLEGE MEDICAL EDUCATION CAMPUS ("Defendants" or "NOVA"), on the grounds and in the amount as hereinafter set forth.

1. Plaintiff is an African-American, an adult resident of the Commonwealth of Virginia, and was the previous Dean of the Northern Virginia Community College Medical Education Campus Nursing Program ("School of Nursing" or "SON").

2.      Defendant Northern Virginia Community College Medical Education Campus is a public community college located at 6699 Springfield Center Drive, Springfield, Virginia 22150, and is a subsidiary of Defendant Northern Virginia Community College System, located at several campuses throughout Northern Virginia.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

4.      Defendants, through their authorized agents within the scope of their authority, have caused severe emotional harm and injury to Dr. Atkins through their racial discrimination against Dr. Atkins in the City of Springfield, Virginia.

5.      Defendants have engaged in unlawful employment practices at the SON located at 6699 Springfield Center Drive, Springfield, Virginia 22150 in violation of 42 U.S.C. § 1981.

6.      Dr. Atkins was the Dean of the SON until January 22, 2019, when she was wrongfully demoted. Her employment contract was not renewed and will expire on June 30, 2019. Throughout her tenure as Dean, Dr. Atkins had never once received a formal performance assessment. However, Dr. Atkins was exceptional in her role as Dean of the SON.

7.      Under Dr. Atkins, the SON earned re-accreditation from the Accreditation Commission for Education in Nursing ("ACEN"), when it was unlikely and unexpected that it would do so. Dr. Atkins was successful in coordinating re-accreditation efforts despite inheriting a disorganized, divided, and toxic SON. She was the fifth Dean within five years.

8.      On November 30, 2018, Dr. Atkins was sent a memorandum by NOVA Provost Nicole Reaves informing her of faculty complaints regarding Dr. Atkins' alleged misconduct as Dean of the SON. It alleged that Dr. Atkins berated staff in front of their peers, refused to meet

with nurses and other staff, shredded documents on problematic employees, conducted favoritism along racial lines, and appeared uncommitted to her job. It alleged privacy violations claiming Dr. Atkins discussed medical and personnel issues in front of other employees, discussed performance issues and intent to terminate employees, addressed performance issues in the midst of faculty meetings, and asked about employees' retirement in front of others. Lastly, the memorandum alleged that Dr. Atkins had conversation about religious issues with an employee that made them uncomfortable, in addition to subjecting NOVA to liability under the American Disability Act by commenting on personnel medical issues. The memorandum included a chart listing the purported facts of each allegation.

9. The November 30, 2018 allegations are untrue and unfounded. The facts listed in support of each allegation do not support any violations of policy related to privacy, favoritism, or general inappropriate treatment of faculty. In fact, much of the alleged actions taken by Dr. Atkins fall within the purview of discretionary actions in her role as Dean. Most of the allegations mischaracterize and embellish normal, discretionary communication that any Dean of an academic institution engages in on a regular basis. To the extent any allegations constitute a violation of any NOVA or SON policy, the allegations are plainly factually incorrect.

10. On December 13, 2018, Dr. Atkins sent a response memorandum to Provost Reaves addressing each and every allegation made in the previous correspondence. It explained that the allegations were simply untrue, and that Dr. Atkins' actions were guided by the best interest of the SON student body as well as her professional judgment.

11. On January 4, 2019, Dr. Atkins was given notice by Provost Reaves stating that Dr. Atkins would not be have her contract as Dean of the SON renewed. It also stated that Dr.

Atkins' contract would expire on June 30, 2019. This non-renewal purportedly was based on the allegations from Provost Reaves' November 30, 2018 correspondence.

12. On January 9, 2019, Provost Reaves issued a letter to Dr. Atkins indicating that Dr. Atkins would be demoted from Dean of the SON to Special Assistant to the Medical Education Provost ("Special Assistant") effective January 22, 2019, until her contract of employment ended on June 30, 2019.

13. Between November 30, 2018 and January 4, 2019, Defendants failed to conduct any investigation of the allegations. Defendants have not produced any evidence to support these allegations. When offered evidence to controvert the allegations, Defendants failed to interview the source of such information.

14. The allegations that served as the alleged basis for Dr. Atkins' non-renewal consisted of fabricated and/or grossly mischaracterized facts and personal attacks on Dr. Atkins.

15. Every faculty member who fabricated the alleged misconduct of Dr. Atkins did so as an act of discrimination associated with Dr. Atkins' race. Each faculty member who accused Dr. Atkins was Caucasian, and would not have made such complaints against a similarly situated Dean who was not an African American.

16. Members of the SON faculty who accused Dr. Atkins also harassed her for enforcing NOVA policy. Such harassment includes the allegations of misconduct made against Dr. Atkins to Provost Reaves.

17. As Dean of the SON, it was Dr. Atkins' duty to enforce the policies of NOVA. Dr. Atkins discovered that certain faculty members were performing duties for other jobs during their paid time at NOVA. Although Dr. Atkins made this known to Defendants, no disciplinary

action was taken. The harassment alleged in paragraph 16 of this Complaint was retaliatory in nature, as a result of these reports.

18. In actuality, the SON that Dr. Atkins inherited fostered a toxic work environment that Dr. Atkins endeavored to remedy while simultaneously saving the SON from losing ACEN accreditation. This is supported by Dr. Rebecca Coffin, Ms. Janice Donahue, Dr. Ann Marie John, Ms. Kenya Fluellin, and Ms. Patricia King, all of whom were faculty under Dr. Atkins. They are willing to testify that any hostile work environment in the SON existed prior to Dr. Atkins' Deanship, that Dr. Atkins worked to fix this environment, and that Dr. Atkins treated faculty with the utmost respect and professionalism.

19. On October 18, 2018, Janice Donahue, a member of the SON faculty, sent her resignation letter to Dr. Atkins which was later sent to Provost Reaves. It stated that the SON faculty, not Dr. Atkins, created "a culture of blatant incivility." It also explained that factions within the SON created an environment where "[certain faculty] bully and disrespect all who do not fall in with them."

20. Dr. Atkins' regularly received praise from SON faculty for her efforts as Dean, and such praise was voiced to Provost Reaves on several occasions. An email from a faculty member to Provost Reaves on May 1, 2018 states: "I am reaching out to you because will not stand by and allow nursing faculty to misrepresent the facts and tarnish Dr. Atkin's name. Since day [one] Dr. Atkins has been very supportive of our program, students, and faculty. [Dr. Atkins] has gone out of her way to make faculty feel appreciated and valued by allowing academic freedom and allowing the program to be faculty driven. She has also celebrated birthdays and accomplishments. With the previous leadership, we had not been able to focus on

improving the program, however since Dr. Atkins' arrival we have: achieved accreditation, created new policies [and] enforced existing policies, hired two new clinical coordinators and [two] lab staff, taken control of our admission[s] process, worked on faculty-development conferences, [worked on] student resources, [and] obtain[ed] a new nursing van for serving the community."

21. On March 13, 2018, NOVA President Ralls spoke at a luncheon where he publicly praised Dr. Atkins in front of a small crowd. He said Dr. Atkins was "the MVP of Nova" and that she was outstanding in her role as Dean of the SON.

22. On June 28, 2018, Dr. Atkins and Provost Reaves received an email from Gary Sargent, the SON EMS Program Director, thanking Dr. Atkins for her exceptional performance as Dean. It states: "From the first time I came to you [(Dr. Atkins)] with the issue of our EMS program being in limbo for months without a permanent program director (2 weeks before our re-accreditation site visit) to multiple other dilemmas you always addressed the issue(s) effectively and expeditiously. I thank you for your mentoring as it was/is truly valued and appreciated in the highest regard."

23. The unrest among the SON faculty was partially induced by a decrease in resources and an increase in student clinical class size for the Fall of 2018. Disagreements on how to handle this situation exacerbated and already divided SON faculty. Emails from July of 2018 indicate that Provost Reaves only considered the opinions of seven SON faculty, some of which were the source of complaints of Dr. Atkins' alleged misconduct. Provost Reaves did not respond to emails from faculty showing support for Dr. Atkins, nor did she grant them a personal audience as she did for Dr. Atkins' critics.

24. Several faculty members who supported Dr. Atkins have since resigned from the SON and have expressed concern regarding Provost Reaves' decision-making abilities. Several of these faculty members are willing to testify on Dr. Atkins' behalf.

25. Defendants have no factual basis for issuing the notice of non-renewal to Dr. Atkins. Defendants intentionally failed to investigate negative allegations of conduct, and intentionally endeavored to remove her from the position of Dean.

26. Defendants intentionally discriminated against Dr. Atkins on the basis of her race in issuing the non-renewal. No other factors could have been considered. Dr. Atkins inherited a grossly disorganized and divided institution. In executing her duties as Dean, as all academic administrators do, she dealt with disagreements and complaints from staff while working to better the culture and solve problems. Dr. Atkins was liked and admired by several faculty members. She saved the SON from losing ACEN accreditation when it was unlikely to do so and implemented new programs despite a limited budget. Simply stated, and given the circumstances, Dr. Atkins was great at her job as Dean of the SON.

27. Plaintiff's race was the basis for Defendants' interpretation, presentation, and unreasonable maintenance of the allegations against her. Dr. Atkins' status as an African-American, as opposed to her performance as Dean, motivated Defendants' decision to issue the non-renewal. The method of Dr. Atkins' removal indicates that her performance or conduct had nothing to do with the non-renewal; she was exceptional at her job. Despite her excellent performance, normal disagreements between staff and administrator were embellished as allegations of misconduct. Such allegations, to the extent that they violated NOVA policy, were unsupported and un-investigated. When evidence controverting allegations was presented to

Defendants, it was willfully ignored. When faculty expressing support for Dr. Atkins voiced their concerns, they were willfully ignored. Defendants chose only to consider opinions adverse to Dr. Atkins, and fabricated truths which would justify her non-renewal, on account of her race.

28. In addition to the discrimination associated with the non-renewal, Dr. Atkins was discriminated against by Defendants, on account of her race, in the form of denial of her sick day, vacation day, and personal day benefits beginning in early 2019.

29. Defendants had informed Dr. Atkins that she would receive a new bank of paid sick, personal, and vacation days beginning in January 2019, per NOVA policy.

30. Dr. Atkins fell ill in early 2019. On or about January 10, 2019, her physician told her that the environment at the SON had caused her stress and anxiety to the extent that they recommended she refrain from returning to work. After Dr. Atkins' health failed to improve, her physician recommended that she enter short term disability leave on January 17, 2019.

31. When she began using paid sick days on January 10, 2019, Dr. Atkins was told by Defendants that she would receive 100% of her salary until her paid sick, personal, and vacation days expired.

32. Dr. Atkins began short-term-disability leave ("STDL") on January 17, 2019.

33. Defendants did not pay Dr. Atkins for her benefits as she was entitled. Defendants' Human Resources department claimed that Dr. Atkins was not eligible to collect sick day pay, personal day pay, or vacation pay, because she was on STDL. In actuality, Defendants denied Dr. Atkins' her paid benefits as an act of retaliation on account of her retaining counsel to address the race-motivated allegations against her that resulted in her demotion.

34. In early 2018, Dr. Atkins was appointed as Interim Dean of Allied Health, as her predecessor, Dr. Robert Wade, was an alcoholic and was unfit to continue in this role. Dr. Atkins was consequently assigned to his role. Defendants had knowledge of Dr. Wade's alcoholism, as he had a reputation for drinking alcohol while at work. Dr. Atkins was asked by the President of NOVA to assist in searching for Dr. Wade's replacement.

35. Instead of terminating Dr. Wade for being regularly intoxicated at work, Defendants allowed him to return to his home in Kentucky from January 2018 to May of 2018, pending his resignation and contract expiration. During this time, he received 100% of his salary pay, and was paid out for his sick leave, personal days, and vacation days.

36. While Dr. Atkins was out on STDL, Defendants contacted various accreditation and nursing organizations to formally inform them that Dr. Atkins' status as Dean of the SON was being rescinded. They did so before Dr. Atkins' contract ended.

37. Dr. Atkins requested that she be paid through the rest of her contract while on leave, just as Dr. Wade had. Defendants did not honor this request as they had for Dr. Wade.

38. Dr. Wade is a Caucasian man. Instead of terminating Dr. Wade for regularly drinking alcohol while at work, Defendants allowed him to be fully paid for several months, resign on his own terms, and collect his sick, personal, and vacation day benefits. They did not publicly rescind his status as Dean of Allied Health until his formal resignation or contract expiration. They did not demote him pending his resignation or contract expiration.

39. Dr. Atkins was intentionally discriminated against when she was not treated the same as a similarly situated employee (Dr. Wade). Both Dr. Atkins and Dr. Wade were Deans who had to take leave. Defendants intentionally deprived Dr. Atkins of the same benefits they

provided to Dr. Wade, despite the fact that Dr. Wade was an underperforming alcoholic while Dr. Atkins was exceptional in her role as Dean of the SON.

40. Dr. Atkins was intentionally discriminated against when she was not treated the same as a similarly situated employee (Dr. Wade), as Defendants did not demote Dr. Wade pending his resignation or contract expiration, but did demote Dr. Atkins.

## CLAIM FOR RELIEF

### RACIAL EMPLOYMENT DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

41. Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

42. Title 42 U.S.C. § 1981 forbids racial discrimination in the making of private as well as public contracts.

43. Section 1981 permits victims of race-based employment discrimination to obtain a jury trial at which both equitable and legal relief, including compensatory and punitive damages may be awarded. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716 (1975).

44. Defendant engaged in intentional discrimination and did so with malice or reckless indifference to the federally protected rights of Plaintiff on account of her race.

45. Defendants' decision of non-renewal was motivated by Plaintiff's race and executed through intentional fabrication and/or mischaracterization of facts without subsequent or adequate investigation, as to create a façade of lawful non-renewal.

46. Members of Defendants' faculty, all of whom were Caucasian, regularly harassed Dr. Atkins despite her excellent job performance on account of her race. Such harassment includes the making of false allegations against Dr. Atkins, resulting in her non-renewal as Dean of the SON.

47. Defendants intentionally discriminated against Dr. Atkins by denying her the same benefits they afforded to similarly situated, Caucasian administrators such as Dr. Wade.

48. Defendants intentionally discriminated against Dr. Atkins by demoting her from Dean of the SON to Special Assistant, as they had not done to similarly situated Caucasian employees.

49. Had Defendants not discriminated against Dr. Atkins, she would have continued in her role as Dean of the SON, had continued employment past June 30, 2019, and received full sick, personal, and vacation benefit pay.

50. As a result of Defendants' wrongful conduct, Dr. Atkins has, and will soon suffer further, economic damages as well as other damages. Dr. Atkins has already suffered considerable emotional distress, damage to her reputation, anxiety, humiliation, and loss of enjoyment of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

A. Award Plaintiff compensatory damages in an amount to be determined by the jury;

B. Award punitive damages in favor of Plaintiff against Defendants in an amount to be determined by the jury;

C.      Award Plaintiff her reasonable costs and expenses incurred in this action, including attorney's fees;

D.      Order equitable relief including but not limited to back pay and front pay; and

E.      Enter such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Respectfully Submitted,

MARSHA ATKINS

By: __/s/ Jason F. Zellman_____
          Counsel

Jason F. Zellman, Esquire, VSB #77499
SUROVELL ISAACS & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Telephone 703-277-9704
Facsimile 703-591-9285
JZellman@SurovellFirm.com
*Counsel for Marsha Atkins*